UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| RYAN RANER, an individual,<br><br>    Plaintiff,<br><br>v.<br><br>THE FUN PIMPS ENTERTAINMENT, LLC, a Texas limited liability company,<br><br>    Defendant. | Case No.<br><br>COMPLAINT<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Ryan Raner, for his Complaint against Defendant The Fun Pimps Entertainment, LLC, hereby alleges as follows:

**INTRODUCTION**

1. Since 2013, Ryan Raner, who is a designer and technical artist, has worked as an independent contractor helping Defendant The Fun Pimps Entertainment, LLC ("TFP"), develop a successful video game called "7 Days to Die." In 2013, Raner was one of only a few people who worked on the game. TFP, which was formed in 2013, was a start-up with limited resources, and the game was funded in part through Kickstarter, which is online crowdfunding platform that allows individuals to place pre-orders to support creative projects. Accordingly, as detailed below, TFP's principal, Joel Huenink, asked Raner to work on the game without a guarantee of payment. Raner would only be paid if the game went to market. Huenink offered Raner 5% of sales, and Raner accepted.

COMPLAINT
(Case No. ) – 1

focal PLLC
900 1st Ave. S., Suite 201
Seattle, Washington 98134
telephone (206) 529-4827
fax (206) 260-3966

2. Since 2013, the popularity of 7 Days to Die has exploded. The game has sold more than 14,000,000 units. The royalty payments made by TFP to Raner, however, have inexplicably decreased. When Raner asked for an accounting of gross sales, TFP refused to provide the gross sales numbers and refused to provide detailed calculations explaining how it calculated the payments it had made to Raner. Further, at the same time it refused to provide sales information, it demanded that Raner sign a new independent contractor agreement waiving his royalty, reducing his compensation, and assigning his rights to TFP, implicitly threatening him that his work would end unless he acquiesced.

3. Accordingly, Raner seeks a judgment for all of his unpaid royalties and a declaration that TFP must pay him 5% of gross sales.

## THE PARTIES

4. Ryan Raner is an individual residing and working in Vancouver, Washington. He is domiciled in and a citizen of the State of Washington.

5. The Fun Pimps Entertainment, LLC is a limited liability company organized under the laws of the state of Texas, with its principal office in Allen, Texas. Upon information and belief, the members of TFP are Joel Huenink, who is domiciled in and a citizen of Nebraska, and Richard Huenink, Jr., who is domiciled in and a citizen of Texas. Upon information and belief, at all relevant times since 2013, Joel Huenink and Richard Huenink have lived and worked in Nebraska and Texas. As of the filing of the Complaint, upon information and belief, they have an intention to maintain a fixed habitation with an intention to remain in the States of Nebraska and Texas, respectively.

## JURISDICTION AND VENUE

6. Diversity jurisdiction exists pursuant to 28 U.S.C. § 1332 because the parties are diverse and the amount in controversy exceeds more than $75,000, exclusive of interest and costs.

7. The Court has personal jurisdiction over TFP based upon its long-standing relationship with Raner. As detailed below, in 2013, Joel Huenink, who knew Raner was in

COMPLAINT
(Case No. ) – 2

focal PLLC
900 1st Ave. S., Suite 201
Seattle, Washington 98134
telephone (206) 529-4827
fax (206) 260-3966

Vancouver, Washington, solicited Raner to work on the video game at issue. Since then, Raner has resided in Vancouver, Washington, and has continued to provide services related to the video game at issue while in Vancouver, Washington. On behalf of TFP, Joel Huenink negotiated and had extensive dealings with Raner, knowing Raner was a resident of the State of Washington. TFP requested Raner perform services (which were performed in the State of Washington) and provide the fruits of those services to TFP. TFP knew that its conduct, as described below, would harm Raner in the Western District of Washington. Further, TFP has substantial business contacts in Washington that are germane to Raner's claims. It distributes the video game at issue through an online platform called "Steam," which is run by Valve Corporation in Washington State. Upon information and belief, TFP has contracts with Microsoft, which is also in Washington State, to distribute the games on systems designed and run by Microsoft. TFP has also sold the game in Washington State.

8. Venue exists under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred, and Raner's injuries were suffered, in this judicial district.

**FACTUAL ALLEGATIONS**

**The Agreement**

9. Ryan Raner is a designer and technical artist who has worked in video games for nearly 20 years.

10. TFP is a video game development company that was formed in 2013. Joel Huenink and Richard Huenink are the co-owners of TFP.

11. Before TFP existed, Joel Huenink and Ryan Raner worked together on several video game projects from 2003 to 2008. Raner worked on these projects without pay as start-up projects, with the goal of receiving payment and future work if one of the games went to market and was successful.

12. In January 2013, Joel Huenink contacted Ryan Raner via email about another such project. Huenink wanted Raner to help with a video game that later became known as "7

COMPLAINT
(Case No. ) – 3

focal PLLC
900 1st Ave. S., Suite 201
Seattle, Washington  98134
telephone (206) 529-4827
fax (206) 260-3966

Days to Die." Huenink did not offer Raner a salary, regular pay, or guaranteed compensation. Instead, he offered Raner a percentage of sales, stating, "I have 1 to 5% royalty to share with you for your effort, depending on how much free time you have." A copy of the email is attached as **Exhibit 1**.

13. On January 19, 2013, Raner responded to the email and asked, "How many hours a week were you hoping to get for 5% royalty?" A copy of the email is attached as **Exhibit 2**.

14. On January 19, 2013, Joel Huenink responded to Ryan Raner's question stating, "Probably about 20 hours a week or more for that." A copy of the email is attached as **Exhibit 3**.

15. On January 19, 2013, Ryan Raner accepted the offer stating, "Yeah I'm on board. I think 20 hours a week is pretty doable." A copy of the email is attached as **Exhibit 4**.

16. On January 19, 2013, Huenink responded, "Excellent!" He then provided further details about the project.

17. Accordingly, Huenink and Raner agreed that Raner would receive 5% of sales for his work on 7 Days to Die.

18. In 2013, Raner was one of only a few people involved in creating 7 Days to Die. As noted, TFP was a start-up that was formed in 2013. 7 Days to Die was the first commercial release for TFP and was funded in part via Kickstarter, which is online crowdfunding platform that allows individuals to place pre-orders to support creative projects.

19. The alpha version of the game, which included Raner's work, was released in August 2013.

**TFP's Breach of the Agreement**

20. Ryan Raner has continued to work on the 7 Days to Die project as an independent contractor since 2013. The versions of the game released since 2013 have included his work.

21. Since the parties made their agreement and the game was released, TFP has made payments to Raner. Raner believed he was receiving a 5% royalty from sales of 7 Days to Die until his December 2021 quarterly payment. Generally, the royalties Raner received for the fourth quarter of each year were higher than other quarters. The December 2021 payment,

COMPLAINT  
(Case No.  ) – 4

focal PLLC  
900 1st Ave. S., Suite 201  
Seattle, Washington  98134  
telephone (206) 529-4827  
fax (206) 260-3966

however, was one-fifth of what it was in 2020 and the lowest he had received in several years.

22. Also, the December 2021 payment followed a popular update to the 7 Days to Die game which broke previous records for the most players online at the same time. Raner believed that this increase in the player count would coincide with an increase in sales, which would be reflected in his royalty payment.

23. Raner did not immediately raise the issue because he thought an increase in sales and royalties might be reflected in the payments for subsequent quarters, but they were not.

24. In July 2022, Raner asked TFP's payroll department to account for how it had calculated and paid his royalties and to provide him with the gross sales numbers. The payroll department did not provide the information requested.

25. Instead, in response to Raner's email to the payroll department, Richard Huenink, one of the owners of TFP, set-up a call with Raner on September 9, 2022, several weeks after Raner requested an accounting from TFP's payroll department. During that call, Huenink refused to provide Raner with the gross sales numbers. Huenink did indicate, however, that, at least in more recent years, TFP had not paid Raner 5% of gross sales. Instead, according to Huenink, TFP had made various deductions to gross sales before calculating the royalty. The deductions included, for instance, bonuses that TFP had paid other employees. Raner never agreed to such deductions. In response to Raner's request for sales information and details about his royalty, Huenink also threated Raner by claiming TFP had overpaid Raner by more than $500,000. Huenink claimed, for instance, that even more deductions should have been made before calculating Raner's 5% royalty.

26. Huenink also told Raner that they needed to enter a new contract and claimed TFP would not pursue the alleged overpayment if Raner signed the new contract. After the call, Huenink sent Raner a draft contract that would have eliminated Raner's 5% royalty, waived Raner's claims against TFP, and lowered his overall compensation.

27. On September 15, 2022, Raner again requested by email the royalty calculation and information about gross sales. Huenink did not provide the information but instead

COMPLAINT
(Case No. ) – 5

focal PLLC
900 1st Ave. S., Suite 201
Seattle, Washington 98134
telephone (206) 529-4827
fax (206) 260-3966

scheduled another call. Again, during the call, Huenink did not provide the sales information requested. Instead, he attempted to pressure Raner into signing the draft consulting agreement, again suggesting that Raner had been overpaid and that TFP would pursue an alleged claim for overpayment unless Raner signed.

28. On September 26, 2022, Huenink wrote that Raner must sign the contract no later than 10:00 a.m. PST on September 28, 2022.

## FIRST CAUSE OF ACTION

### (Breach of Contract)

29. Raner realleges and incorporates by reference all of the allegations set forth in the preceding paragraphs as if fully set forth herein.

30. The Agreement is a valid and enforceable contract.

31. TFP has breached the Agreement by failing to pay Raner 5% of gross sales of 7 Days to Die. Upon information and belief, the amount owed exceeds $75,000.

32. Further, TFP has breached the duty of good faith and fair dealing by failing to account for sales and to provide its royalty calculations.

33. Raner is entitled to compensatory damages in an amount to be determined at trial.

34. Because the precise amount of royalties owed to Raner and a complete accounting cannot be determined without access to TFP's books and records, Raner also requests that the Court order TFP to give Raner access to all books and records related to sales and the calculation of the royalty.

## SECOND CAUSE OF ACTION

### (Declaratory Judgment)

35. Raner realleges and incorporates by reference all of the allegations set forth in the preceding paragraphs as if fully set forth herein.

36. This Court has the authority to declare the rights and legal relationship between the parties pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*.

37. The parties have an actual, present, and existing dispute as to Raner's rights to

COMPLAINT
(Case No. ) – 6

focal PLLC
900 1st Ave. S., Suite 201
Seattle, Washington 98134
telephone (206) 529-4827
fax (206) 260-3966

receive an accounting from TFP of 7 Days to Die sales; his right to inspect all records related to sales of 7 Days to Die; his right to a full 5% royalty on all gross sales; and TFP's allegation that Raner was overpaid. The parties have direct, substantial, and opposing interests, the judicial determination of which is necessary for final and conclusive resolution of the dispute.

38. Raner asks this Court to declare: (a) that Raner is entitled to receive documents related to the calculation of his royalty from TFP; (b) that Raner has the right to inspect and audit all records of sales of 7 Days to Die; (c) that Raner is entitled to receive the full 5% royalty on all gross sales of 7 Days to Die; and (d) that TFP has not overpaid Raner.

39. Accordingly, there is a bona fide dispute that is ripe for adjudication pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*

### THIRD CAUSE OF ACTION

### (Accounting)

40. Raner realleges and incorporates by reference all of the allegations set forth in the preceding paragraphs as if fully set forth herein

41. Raner is owed an amount from the sales of 7 Days of Die that must be determined pursuant to a full accounting. The determination of the amount owed is too complicated, indeed impossible, to be determined without an accounting of the 7 Days to Die sales and related transactions. Further, TFP has control of the information needed for a full accounting.

42. Raner requested an accounting, but TFP has refused to render it.

43. Raner requests the Court order that a full accounting of 7 Days to Die sales be provided to Raner.

### PRAYER FOR RELIEF

WHEREFORE, Raner respectfully requests that judgment be entered in his favor on each of the claims stated herein and against Defendant, and that he be awarded relief that includes, but is not limited to, the following:

1. Compensatory damages in an amount to be determined at trial;

2. A declaratory judgment that: (a) Raner is entitled to receive accounting

COMPLAINT
(Case No. ) – 7

focal PLLC
900 1st Ave. S., Suite 201
Seattle, Washington 98134
telephone (206) 529-4827
fax (206) 260-3966

documents from TFP; (b) Raner has the right to inspect and audit all records on sales of 7 Days to Die; (c) Raner is entitled to receive the full 5% royalty payments on all sales of 7 Days to Die; and (d) TFP has not overpaid Raner.

3. Awarding Raner full costs of suit, including but not limited to, reasonable attorneys' fees, as permitted by law;

4. Awarding prejudgment interest as permitted by law; and

5. Such other relief as the Court deems just and proper.

Dated this 28th day of September, 2022.

Respectfully submitted,

FOCAL PLLC

By: *s/ Kimberlee Gunning*
*s/ Venkat Balasubramani*
Kimberlee Gunning, WSBA #35366
Venkat Balasubramani, WSBA #28269
900 1st Avenue S., Suite 201
Seattle, Washington 98134
Tel: (206) 529-4827
Fax: (206) 260-3966
Email: kim@focallaw.com
Email: venkat@focallaw.com

Attorneys for Plaintiff Ryan Raner

COMPLAINT
(Case No. ) – 8

focal PLLC
900 1st Ave. S., Suite 201
Seattle, Washington 98134
telephone (206) 529-4827
fax (206) 260-3966

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff Ryan Raner demands trial by jury in this action of all issues so triable.

DATED: September 28, 2022             *s/ Kimberlee Gunning*
                                      Kimberlee Gunning, WSBA #35366

COMPLAINT
(Case No. ) – 1

focal PLLC
900 1st Ave. S., Suite 201
Seattle, Washington 98134
telephone (206) 529-4827
fax (206) 260-3966