1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

7

8

RYAN RANER,

Case No. 3:22-cv-05718-TMC

9

Plaintiff,

ORDER GRANTING IN PART AND
DENYING IN PART MOTION FOR
PARTIAL SUMMARY JUDGMENT

10

v.

11

THE FUN PIMPS ENTERTAINMENT LLC;

12

RICHARD HUENINK; JOEL HUENINK,

13

Defendants.

14

Before the Court are Plaintiff Ryan Raner's motion for partial summary judgment,

15

Dkt. 116, and Defendants' evidentiary objections to materials submitted by Raner in support of

16

the motion. Dkt. 137. For the following reasons, Raner's motion is GRANTED IN PART AND

17

DENIED IN PART and Defendants' objections are DENIED as MOOT.

18

**I.    BACKGROUND**

19

Plaintiff Ryan Raner is a video game developer who worked for the two individual

20

defendants, Joel and Richard Huenink, and their company Defendant The Fun Pimps

21

Entertainment, LLC as a "prop artist" on a "zombie hoard survival-themed video game" called

22

"7 Days to Die" between 2013 and 2022. Dkt. 53 ¶¶ 1, 78; Dkt. 141 ¶ 4; Dkt. 106 at 14. This

23

case concerns a dispute over Raner's compensation agreement. Raner alleges that, when he first

24

agreed to work on the game, the parties agreed he would be paid a five percent royalty from the game's gross sales and without any deductions aside from "limited start-up expenses discussed in 2013." Dkt. 53 ¶¶ 31–44.[1] Defendants allege that the agreement was for "a 5% share of net profits, less expenses," Dkt. 106 at 16, and that "[b]eginning with his first paycheck from TFP in June of 2013, Raner was always paid according to the terms of the original . . . agreement, based on a % of net profits, less expenses, from sales of the '7 Days to Die' PC game." *Id.* at 16.

According to Defendants, on August 1, 2015, the 2013 compensation agreement was "replaced" with a new agreement in which the parties agreed, in part, that TFP would:

> [P]ay Raner either the same 5% of TFP's net profits, less expenses, from sales of the 7 Days to Die PC game received by TFP that it had been paying since May 2013 or a guaranteed $12,000 per month, whichever was greater, while he was working full time (40 hours per week) for TFP.

*Id.* at 18; *see also* Dkt. 141 ¶¶ 5–6. Defendants also allege that, "[b]eginning in 2016 and continuing until he was fired in 2022, Raner's work performance for TFP experienced significant fluctuations and negative changes." Dkt. 106 at 18. In Defendants' version of events, Raner worked less than half of the agreed 40 hours per week and his work product was poor and sometimes "unusable." *See id.* at 18–21; Dkt 141 ¶¶ 13–17, 29. Defendants also allege that, between 2013 and 2021, they inadvertently overpaid Raner due to accounting mistakes and paying him for sales of the "7 Days to Die" *console* games, when he was only supposed to be paid for sales of the *PC* game. Dkt. 106 at 21.

Defendants assert two counterclaims based on these allegations in their answer to Raner's third amended complaint.[2] *Id.* at 21–23. First, Defendants claim that Raner breached the 2015

---

[1] The parties made the 2013 agreement over email. *See id.* ¶¶ 20–27.

[2] Defendants brought a third counterclaim for a declaratory judgment on which the parties reached a stipulated judgment. *See* Dkt. 51.

agreement by failing to "provide the promised services" and work the required number of hours. *Id.* at 22. For relief, Defendants ask for "compensatory damages in an amount to be determined at trial" for "compensation paid to Raner for services not provided by Raner since at least 2016" and "expenses incurred by TFP to hire other artists to perform the services that Raner promised to, but failed to perform." *Id.* They also ask for "reimbursement and repayment of monies that were inadvertently paid to Raner during the course of his work with TFP as an independent contractor." *Id.*

Defendants' second counterclaim, which is labeled "accounting and reimbursement," alleges:

> As a result of inadvertent accounting mistakes, Raner received monies mistakenly paid by TFP as part of Raner's compensation, resulting in an overpayment to Raner in an amount exceeding several hundreds of thousands of dollars during the time period covering at least 2016 through to 2022. Raner was also overpaid because he received a portion of revenues from sales of the "7 Days to Die" console games, not just the PC game version, to which he was not entitled.

*Id.* Defendants request "repayment of all amounts overpaid to Raner during his work with TFP . . . at least from October 2016 through September 2022." *Id.*

In December 2021, Raner noticed that one of his royalty payments was less than he expected. Dkt. 153 ¶ 36. Raner requested an accounting of "gross sales and how his royalty payments were calculated and paid." *Id.* ¶¶ 5, 39. According to Raner, Defendants declined and informed him that "as late as 2021, TFP had started making additional new deductions above and beyond the limited start-up expenses discussed in 2013." *Id.* ¶ 40. After rejecting a "new contract arrangement" offered by Defendants, Raner filed this lawsuit on September 28, 2022, and Defendants terminated his employment at The Fun Pimps. Dkt. 106 at 21; Dkt. 1.

On January 18, 2024, Raner moved for summary judgment on Defendants' first and second counterclaims. Dkt. 116. Defendants responded and filed evidentiary "objections" to

certain materials Raner submitted in support of the motion, and Raner replied. Dkt. 135, 137, 149. No party requested oral argument and the motion is ripe for the Court's consideration.

## II.    DISCUSSION

### A.    Jurisdiction

Before addressing Raner's motion, the Court considers whether it has subject matter jurisdiction to hear this case. *See United Invs. Life Ins. Co. v. Waddell & Reed Inc.*, 360 F.3d 960, 966–67 (9th Cir. 2004) (district courts have a duty to establish subject matter jurisdiction sua sponte if the issue is not disputed by the parties).

Raner's original complaint and Defendants' first answer assert that the Court has diversity jurisdiction. Dkt. 1 ¶ 6; Dkt. 19 ¶ 3; *see Morongo Band of Mission Indians v. California State Bd. of Equalization*, 858 F.2d 1376, 1380 (9th Cir. 1988) ("In determining federal court jurisdiction, we look to the original, rather than to the amended, complaint. Subject matter jurisdiction must exist as of the time the action is commenced."). Diversity jurisdiction requires "complete diversity," meaning that "each plaintiff must be of a different citizenship from each defendant." *Grancare, LLC v. Mills ex rel. Thrower*, 889 F.3d 543, 548 (9th Cir. 2018). A corporation is a citizen of the state or foreign state where it is incorporated and of the state or foreign state where it has its principal place of business. *See* 28 U.S.C. § 1332(c)(1). In addition, to have diversity jurisdiction, the amount in controversy must exceed "the sum or value of $75,000." 28 U.S.C. § 1332(a). "[T]he amount in controversy, for purposes of jurisdiction, is the total amount at stake in the underlying litigation." *Daley v. Walmart Stores, Inc.*, SA CV 18-0518-DOC (GJSx), 2018 U.S. Dist. LEXIS 105135, at *17 (C.D. Cal. June 21, 2018) (citing *Bank of Am. Nat. Ass'n v. Twin Harbors Lumber Co.*, 465 F.2d 489, 491 (9th Cir. 1972)).

Raner "is domiciled in and a citizen of the State of Washington." Dkt. 1 ¶ 4. As for Defendants, The Fun Pimps Entertainment, LLC, is incorporated and has its principal place of

business in Texas, Joel Huenink is domiciled in and a citizen of Nebraska, and Richard Huenink is domiciled in and a citizen of Texas. *Id.* ¶ 5; *see* Dkt. 19 at 2, 9. The parties allege and the evidence submitted at summary judgment confirms that the amount in controversy for both Raner's claims and Defendants' counterclaims exceeds $75,000. Dkt. 1 ¶¶ 6, 25; Dkt. 19 at 10; *see* Dkt. 172-1 at 11; Dkt. 145 ¶ 7, 21–22. Accordingly, the Court has subject matter jurisdiction.

## B.   Legal Standards

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party may fulfill its initial burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), or by producing "evidence negating an essential element of the nonmoving party's claim." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). To carry their ultimate burden of persuasion, the movant "must persuade the court that there is no genuine issue of material fact." *Id.* If the moving party meets its initial burden of production, the non-moving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. To do so, they must present "some 'significant probative evidence tending to support the complaint.'" *Gen. Bus. Sys. v. N. Am. Philips Corp.*, 699 F.2d 965, 971 (9th Cir. 1983) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to

make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof at trial. *Celotex*, 477 U.S. at 323.

The evidence relied upon by the nonmoving party must be able to be "presented in a form that would be admissible in evidence." *See* Fed. R. Civ. P. 56(c)(2).

"Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255. So in ruling on a motion for summary judgment, "a District Court must resolve any factual issues of controversy in favor of the non-moving party," *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990) (internal quotations omitted), and view the evidence in the light most favorable to it, *Anderson*, 477 U.S. at 255. But conclusory, nonspecific statements in affidavits are not sufficient, and "missing facts" will not be presumed. *See Lujan,* 497 U.S. at 889.

### C.    Analysis

#### 1.    *Breach of Contract Counterclaim*

Raner first argues that the portion of Defendants' breach of contract counterclaim for "reimbursement and repayment of monies that were inadvertently paid to Raner" should be dismissed because there is no evidence that any breach by Raner proximately caused The Fun Pimps to inadvertently overpay him. Dkt. 116 at 8–10; *see P.E.L. v. Premera Blue Cross*, 2 Wn.3d 460, 481, 540 P.3d 105 (Wash. 2023) ("A breach of contract is actionable only if the contract imposes a duty, the duty is breached, and the breach proximately causes damage to the claimant."). Raner contends that this request seeks relief for "inadvertent accounting mistakes" and payments mistakenly made for console revenues, even though these alleged overpayments were caused by Defendants' own actions, not any alleged breach of contract by Raner. Dkt. 116 at 9. Raner does not ask for summary judgment on the portion of the counterclaim seeking compensatory damages for Raner's alleged breach. *See* Dkt. 149 at 8.

In response, Defendants clarify that their request for "reimbursement and repayment" for Raner's alleged breach of contract is for "restitution of 50% of the amount of compensation received by Raner for work he never performed due to his breach" and is made in the alternative to their request for compensatory damages. *See* Dkt. 140 at 15 ("Alternatively, TFP's damages for Raner's breach of contract includes restitution of 50% of the amount of compensation received by Raner for work he never performed due to his breach."). Defendants also do not dispute, and appear to concede, that their breach of contract counterclaim does not ask for relief for overpayments made to Raner caused by Defendants' own accounting mistakes, and not by Raner's alleged breach. *See* Dkt. 140 at 15 ("Raner's argument that TFP cannot recover mistaken overpayments to Raner under a breach of contract theory improperly conflates contract proximate cause damage principles with the mistaken overpayment amounts received by Raner under TFP's reimbursement/restitution/money had and received cause of action."). They also do not dispute that they are not entitled to relief for mistaken overpayments to Raner for sales of the console version of the game under the first counterclaim. *See id.* Defendants further appear to clarify that only the second counterclaim asks for relief for overpayments caused by their own mistakes. *See id.* Accordingly, the Court will grant summary judgment as to any portion of Defendants' first counterclaim that requests relief for injuries caused only by Defendants' own mistaken payments and not any breach of contract by Raner.

2.      *Accounting/Unjust Enrichment Counterclaim*

Raner next argues that The Fun Pimps' second counterclaim should be dismissed because "(1) there is a failure of proof as to essential elements of its claim and (2) absent a substantive basis for liability, i.e., TFP's claim for an accounting, TFP cannot prove an entitlement to relief based on that claim." Dkt. 116 at 11. In response, The Fun Pimps argue that the counterclaim is "a cause of action for money had and received" and list several possible legal theories that the

claim could support, including unjust enrichment. *See* Dkt. 143 at 15–18 (referring to a "cause of action . . . sometimes known as assumpsit, quasi-contract or restitution, which right of action is well settled" and noting that its counterclaim "is also one for restitution and unjust enrichment"). In his reply, Raner argues that "TFP does not specifically point to any allegations in its current claim for an accounting that demonstrate that it pled any of these claims 'albeit' under the 'label' of a claim for an accounting." Dkt. 149 at 9.

Raner also contends that The Fun Pimps may not set out a new legal theory in opposition to a motion for summary judgment and cannot "rely upon the general notice standards of Fed. R. Civ. P. 8 or the cases it cites that discuss those standards in the context of motions to dismiss to belatedly assert a new claim at summary judgment." Dkt. 149 at 10. But whether the second counterclaim is "new" (meaning not adequately pled) is determined by looking to Rule 8's "liberal notice pleading" standard. *Corona v. Time Warner Cable, Inc.*, No. CV 13-5521, 2014 WL 11456535, at *4 (C.D. Cal. Oct. 16, 2014) ("To rely on a theory at summary judgment, plaintiffs are 'required either (1) to plead the additional [] theory in their complaints, or (2) to make known during discovery their intention to pursue recovery on the [ ] theory omitted from their complaints.' . . . This concept underlies the rationale for the Rule 8 pleading standard . . . ." (quoting *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000)); *see Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 969 (9th Cir. 2006) (evaluating whether the complaint provided the defendant with "fair notice," under Rule 8, of a legal theory set out in the response to a motion for summary judgment); *Wormuth v. Lammersville Union Sch. Dist.*, 305 F. Supp. 3d 1108, 1118–19 (E.D. Cal. 2018) (same).[3]

---

[3] "[T]he rules and cases establishing pleading standards for claims in complaints apply equally to counterclaims in answers." *Verco Decking, Inc. v. Consol. Sys.*, No. CV-11-2516-PHX-GMS, 2013 WL 6844106, at *2 (D. Ariz. Dec. 2, 2013) (citing *Starr v. Baca,* 652 F.3d 1202, 1216 (9th Cir. 2011)).

Rule 8 requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "Each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). The statement of the claim need only give the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint is subject to dismissal under Rule 8 if "one cannot determine from the complaint who is being sued, for what relief, and on what theory." *McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996); *see also AlliedSignal, Inc. v. City of Phoenix*, 182 F.3d 692, 698 (9th Cir. 1999) (Ferguson, J. concurring in part and dissenting in part) ("[T]he plaintiff must set forth the theory of the case 'with enough detail to guide discovery.'" (quoting *McHenry*, 84 F.3d at 698)).

"Notice pleading requires the plaintiff to set forth in his complaint *claims for relief,* not causes of action, statutes or legal theories." *Alvarez v. Hill*, 518 F.3d 1152, 1157 (9th Cir. 2008); *see also id.* ("A complaint need not identify the statutory or constitutional source of the claim raised."); *Pac. Coast Fed'n of Fishermen's Ass'ns v. Glaser*, 945 F.3d 1076, 1086 (9th Cir. 2019) ("A party need not plead specific legal theories in the complaint, so long as the other side receives notice as to what is at issue in the case." (internal quotation marks omitted)). Courts evaluate with "liberality" whether the complaint provides "sufficient notice." *Skaff v. Meridien N. Am. Beverly Hills, LLC,* 506 F.3d 832, 839 (9th Cir. 2007); Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").

Relatedly, incorrect labeling of a claim or failure to specify its correct legal basis is not grounds for dismissal under Rule 8; courts determine whether there is fair notice by looking to the substance of the claims. *See Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 10–11 (2014) (overturning dismissal of plaintiffs' claim for their "failure to invoke" its statutory basis because the federal pleading rules "do not countenance dismissal of a complaint for imperfect statement

of the legal theory supporting the claim asserted"); *Sessions v. Chrysler Corp.*, 517 F.2d 759, 760–61 (9th Cir. 1975) (explaining that mislabeling a cause of action in the complaint "is irrelevant" so long as the plaintiff is "entitled to relief against [defendants] on any theory"); 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1286 (4th ed. 2023) ("A pleading will be judged by the quality of its substance rather than according to its form or label.").

Taken together, the above rules establish that "fair notice" does not require the complaint (or answer) to identify with precision or correctly label the cause of action or legal theory relevant to a particular claim (or counterclaim). Instead, the substance of the complaint must be sufficient to give the defendant some notice of the theory asserted. Bearing these principles in mind, the Court finds that Defendants' second counterclaim provides "fair notice" to Raner. The second counterclaim's allegations read in full:

> As a result of inadvertent accounting mistakes, Raner received monies mistakenly paid by TFP as part of Raner's compensation, resulting in an overpayment to Raner in an amount exceeding several hundreds of thousands of dollars during the time period covering at least 2016 through to 2022. Raner was also overpaid because he received a portion of revenues from sales of the "7 Days to Die" console games, not just the PC game version, to which he was not entitled. TFP hereby demands repayment of all amounts overpaid to Raner during his work with TFP as an independent contractor, at least from October 2016 through September 2022.

Dkt. 106 at 22. "Unjust enrichment occurs when one retains money or benefits which in justice and equity belong to another." *Young v. Young*, 164 Wn.2d 477, 484, 191 P.3d 1258 (Wash. 2008) (internal quotation marks omitted).[4] The elements of an unjust enrichment claim in Washington are as follows:

---

[4] While The Fun Pimps argue their allegations could support multiple legal theories, "unjust enrichment" is their only theory that is an independent cause of action. *See Young*, 164 Wn.2d at 484 ("Unjust enrichment is the method of recovery for the value of the benefit retained absent any contractual relationship because notions of fairness and justice require it."); *Chem. Bank v.*

A benefit conferred upon the defendant by the plaintiff; an appreciation or knowledge by the defendant of the benefit; and the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value.

*Young*, 164 Wn.2d at 484. The allegations supporting the second counterclaim suggest that Raner received a benefit (the alleged overpayments), knew that he received the payments, and was not "entitled" to receive at least some of the alleged inadvertent payments. These allegations are enough to give fair notice of a claim for unjust enrichment, even without labeling it as such. *See Wormuth*, 305 F. Supp. 3d at 1119 (allegations that school principal suspended a student soon after he abused female students were enough to "put defendants on notice of a potential gender discrimination claim" based on differential treatment even though allegations were "minimal" and the complaint did not "expressly allege plaintiff was treated differently because he is male." (citing *Johnson*, 574 U.S. at 11)); *cf. Hiatt v. United States*, No. CV-20-02247-PHX-MTL, 2021 WL 2454047, at *3 (D. Ariz. June 16, 2021) (complaint did not provide "fair notice" of plaintiff's assertion that the APA provided subject matter jurisdiction where "[n]othing in the Complaint" gave "notice" to the defendants "that they would need to move to dismiss claims under the APA."). Put differently, given the match between The Fun Pimps' allegations and the elements of an unjust enrichment claim, one could "reasonably anticipate" that Defendants could

---

*Wash. Pub. Power Supply Sys.*, 102 Wn.2d 874, 904 (1984) ("Relief for unjust enrichment is frequently called restitution."); *Auburn Mechanical v. Lydig Constr.*, 89 Wash. App. 893, 903–04 (1998) ("[T]he substance of an action for unjust enrichment lies in a promise, implied by law, that one will render to the person entitled thereto that which, in equity and good conscience, belongs to the latter. At common law, such actions are brought under the principles of assumpsit." (quoting *Bill v. Gattavara*, 34 Wn.2d 645, 650 (1949))).

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PARTIAL SUMMARY JUDGMENT - 11

bring the claim under a theory of unjust enrichment. *See Wormuth*, 305 F. Supp. 3d at 1121;

*McHenry*, 84 F.3d at 1178.[5]

The Court recognizes, however, that there is some prejudice to Raner occasioned by

Defendants' mislabeling. The Ninth Circuit has acknowledged:

> the general principle that [t]he federal rules, and the decisions construing them,
> evince a belief that when a party has a valid claim, he should recover on it regardless
> of his counsel's failure to perceive the true basis of the claim at the pleading stage,
> *provided always that a late shift in the thrust of the case will not prejudice the other
> party in maintaining his defense upon the merits.*

*Mir v. Fosburg*, 646 F.2d 342, 347 (9th Cir. 1980) (emphasis added) (quoting 5 Charles Alan

Wright & Arthur R. Miller, Federal Practice and Procedure § 1219 (1969)); *see also Wormuth*,

305 F. Supp. 3d at 1118 (considering whether the defendant was prejudiced by the plaintiff

raising new theories for the first time at the summary judgment stage). Unlike other cases

involving similar issues, Raner suggests that Defendants' decision to consistently label the

counterclaim as one for "accounting" across three pleadings led him to believe the claim

supported a different legal theory than Defendants now assert. *See* Dkt. 116 at 10–13 (arguing

that summary judgment is warranted because Defendants do not have evidence to support the

essential elements of a Washington state accounting claim); *cf. Alvarez*, 518 F.3d at 1158

("There is no suggestion that appellees were led astray by Alvarez's failure to appreciate the

technical distinctions they now invoke."); *Waters v. Puget Sound Elec. Workers Health and*

---

[5] Because Raner did not challenge the sufficiency of the allegations to support an unjust
enrichment claim or move for summary judgment on the unjust enrichment theory, the Court
does not consider whether these factual allegations are enough to make the claim "plausible" or
whether there is sufficient evidence to raise genuine disputes of material fact. *See Johnson*, 574
U.S. at 12 ("Our decisions in [*Twombly*, 550 U.S. 544] and [*Iqbal*, 556 U.S. 662] are not in
point, for they concern the *factual* allegations a complaint must contain to survive a motion to
dismiss."). As explained below, however, the Court will grant leave to Raner to supplement his
briefing to move for summary judgment on the unjust enrichment claim if he so chooses.

*Welfare Tr. Fund*, No. C09-945, 2010 WL 2196256, at *4 (W.D. Wash. May 26, 2010) ("The Trust has not advanced any argument that it did not have notice, it did not understand Waters' argument, or that it would have argued differently had Waters properly captioning his complaint.").

Here, this prejudice can be cured by allowing Raner supplemental briefing to address the summary judgment standard now that Defendants have clarified the legal theory underlying their second counterclaim. *Cf.* 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1219 (4th ed. 2023) (explaining that courts can often cure prejudice caused by a late "alteration in legal theory" by continuing scheduling order deadlines). Additional discovery is unnecessary because the underlying factual allegations are unchanged.

Additionally, because unjust enrichment is an equitable claim, and because the relevant facts are likely independent of any legal claim or counterclaim, it will be tried to the bench if it survives summary judgment. *See Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 962 (9th Cir. 2001) ("[T]he Seventh Amendment preserves the right to trial by jury of all legal claims, whereas no right to a jury exists for equitable claims." (internal quotation marks omitted)); *United States SEC v. Jensen*, 835 F.3d 1100, 1111 (9th Cir. 2016) ("[T]he right to a jury trial exists only for legal and not equitable claims, but the jury serves as the finder of fact for 'issues common to both claims.'" (quoting *Tull v. United States*, 481 U.S. 412, 425 (1987)). Supplemental briefing will also help the Court determine whether any issues relevant to the unjust enrichment claim can be narrowed before the bench portion of the trial.

Raner's request to dismiss Defendants' unjust enrichment claim is therefore DENIED. No later than April 8, 2024, each side may submit a supplemental brief of no more than 15 pages addressing whether The Fun Pimps have presented evidence from which a reasonable factfinder could rule in their favor on unjust enrichment for each category of overpayments alleged.

3.      *Objections to Raner's Evidence*

Separate from its brief in opposition to Raner's motion, Defendants filed a document containing objections to certain materials Raner submitted, and requested that the Court "disregard and/or strike such statements and materials" under Federal Rule of Evidence 408. Dkt. 137 at 1. Because the evidence objected to is not relevant to the Court's ruling, Defendants' request is DENIED as MOOT. *See Williams v. County of San Diego*, 523 F. Supp. 3d 1183, 1194 (S.D. Cal. 2021) (holding that courts need not consider evidentiary objections made at summary judgment if they are not "material" to the ruling on the motion (citing *Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010)).

### III.    CONCLUSION

For the reasons explained above, Plaintiff Ryan Raner's motion for partial summary judgment, Dkt. 116, is GRANTED IN PART and DENIED IN PART as follows:

- Any portions of Defendants' first counterclaim seeking relief for overpayments to Raner caused by Defendants' own accounting mistakes or based on sales of the console version of "7 Days to Die" are DISMISSED.

- Raner's request to dismiss Defendants' second counterclaim is DENIED. No later than April 8, 2024, each side may submit a supplemental brief of no more than 15 pages addressing whether The Fun Pimps have presented evidence from which a reasonable factfinder could rule in their favor on unjust enrichment for each category of overpayments alleged.

Dated this 19th day of March, 2024.

Tiffany M. Cartwright
United States District Judge

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PARTIAL SUMMARY JUDGMENT
- 14